**COMMONWEALTH of Pennsylvania,
Appellee,**

v.

**Maurice KLEIN, Appellant.**

Superior Court of Pennsylvania.

Argued April 4, 2000.
Filed March 20, 2002.

David E. Cook, York, for appellant.

Brian Sinnett, Asst. Dist. Atty., York, for Com., appellee.

BEFORE: STEVENS, MUSMANNO and LALLY–GREEN, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of York County following Appellant's conviction on the charges of reckless endangerment, simple assault, and accidents involving death or personal injury. On July 18, 2000, this Court quashed the appeal, concluding that the sentencing court implicitly vacated its June 23, 1999 order and that Appellant had not properly filed an appeal from the June 25, 1999 order. On August 17, 2000, Appellant filed a petition for allowance of appeal, which was granted by the Pennsylvania Supreme Court. On October 4, 2001, the Supreme Court reversed this Court and remanded for disposition of this

appeal on its merits. Specifically, the Supreme Court concluded that the sentencing court's June 25, 1999 order was merely a correction of a defect in the June 23, 1999 order, and, therefore, the sentencing court had jurisdiction to modify Appellant's sentence.

¶ 2 On appeal, Appellant challenges the sufficiency of the evidence and the propriety of his sentence. We affirm Appellant's judgment of sentence regarding his convictions for simple assault and accidents involving death or personal injury; however, we vacate Appellant's judgment of sentence regarding his conviction for reckless endangerment.

■ ¶ 3 Appellant's first contention is that the evidence was insufficient to sustain his convictions. "The law is settled in this Commonwealth that in reviewing the sufficiency of the evidence, the appellate court is required to review all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, ... [as verdict winner]." *Commonwealth v. Earnest*, 386 Pa.Super. 461, 563 A.2d 158, 159 (1989) (citation omitted). "The test is whether the evidence, thus viewed, is sufficient to prove guilt beyond a reasonable doubt." *Commonwealth v. Taylor*, 324 Pa.Super. 420, 471 A.2d 1228, 1229 (1984) (citation omitted). Moreover, "it is clear that a jury may believe all or only a part of a witness' testimony, and so long as the verdict is supported by the evidence there is no basis for interference with the fact-finding function of the jury." *Commonwealth v. Simpson*, 316 Pa.Super. 115, 462 A.2d 821, 824 (1983) (citation omitted).

¶ 4 The evidence reveals the following: On July 16, 1998, Volunteer Firefighter Joseph Herring was diverting traffic away from a fire scene at the intersection of Club House Road and State Route 851 in York County when a vehicle being driven

by Appellant approached the intersection. Mr. Herring approached the driver's side window of Appellant's vehicle and informed Appellant, who Mr. Herring knew, that he would have to detour around the area. Appellant told Mr. Herring that he was a citizen, that he was there to help, and that he wanted to approach the fire scene. Mr. Herring refused Appellant access, and, in response, Appellant drove over orange cones, which had been placed by Mr. Herring, and drove to the draft site.[1] Mr. Herring called the police.

¶ 5 About ten minutes later, Appellant returned to the intersection where Mr. Herring was directing traffic, and Mr. Herring, who was standing approximately six feet in front of Appellant's vehicle, motioned for Appellant to stop. Appellant so complied, and Mr. Herring shouted to Appellant that he had called the police. Appellant replied that he was not waiting for the police and ran over Mr. Herring. Specifically, Appellant's vehicle hit Mr. Herring's knees, thereby throwing Mr. Herring onto the hood of Appellant's vehicle. Mr. Herring got off the hood, and Appellant backed his car approximately ten feet away from Mr. Herring. Appellant then "raced his engine," hit Mr. Herring's knees, and left the scene. As a result of being hit, Mr. Herring suffered pain, bruises, and cuts.

¶ 6 Appellant was arrested and charged with various crimes in connection with the incident. He proceeded to trial and was convicted of reckless endangerment, simple assault, and accidents involving death or personal injury. On June 23, 1999, a sentencing hearing was held, following which Appellant was sentenced to time

served to twelve months imprisonment for each conviction, the sentences to run concurrently. On June 25, 1999, the trial court entered an order indicating that the court had discovered that Appellant's credit for time served was one day and not thirty-three days as was originally reported and ordered Appellant to appear for resentencing on June 30, 1999. On June 28, 1999, Appellant filed a direct appeal to this Court from his June 23, 1999 sentence. On June 30, 1999, Appellant was resentenced to one month to twelve months imprisonment for each conviction, the sentences to run concurrently. The trial court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and Appellant so complied. The trial court then filed a Pa. R.A.P.1925(a) opinion.[2]

¶ 7 Appellant first challenges the sufficiency of the evidence with regard to his conviction for reckless endangerment. 18 Pa.C.S.A. § 2705 provides that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."

> Our law defines 'serious bodily injury' as 'bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ.' To sustain a conviction under Section 2705, the Commonwealth must prove that the defendant had an actual present ability to inflict harm and not merely the apparent ability to do so. Danger, not merely the apprehension of danger, must be created. The mens rea for recklessly endan-

---

1. The draft site is the location where water is pumped from the fire hydrant.

2. As indicated previously, this Court quashed Appellant's appeal, and Appellant filed a peti-

tion for allowance of appeal. The Supreme Court reversed this Court and remanded for a determination of the merits.

gering another person is 'a conscious disregard of a known risk of death or great bodily harm to another person.' *Commonwealth v. Hopkins,* 747 A.2d 910, 915–916 (Pa.Super.2000) (citations and quotation omitted).

¶ 8 Here, Mr. Herring testified at trial that Appellant hit him with a car, stopped the car, backed up, "revved the engine" of the car, and hit Mr. Herring again, and an eyewitness confirmed Mr. Herring's version of the incident. N.T. 5/11/99 at 132–135. Clearly, hitting Mr. Herring with a car created a risk of serious bodily injury and/or death and indicated that Appellant had the present ability to inflict harm. Also, the evidence revealed that Appellant's actions were intentional and done with a conscious disregard of a known risk of death or great bodily harm. Contrary to Appellant's assertion, it was unnecessary for the Commonwealth to prove that Appellant actually caused death or serious bodily injury. Rather, the Commonwealth was required to show that Appellant placed Mr. Herring in such danger.

¶ 9 Appellant next contends that the evidence was insufficient to support his conviction for simple assault. Pursuant to 18 Pa.C.S.A. § 2701, "[a] person is guilty of assault if he: (1) attempts to cause or intentionally, knowingly, or recklessly causes bodily injury to another." 18 Pa. C.S.A. § 2301 defines "bodily injury" as "[i]mpairment of physical condition or substantial pain."

The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.

'To show an 'attempt' to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury[.]' 'A person acts intentionally with respect to a material element of an offense' if 'it is his conscious object to engage in conduct of that nature or to cause such a result[.]'

*Commonwealth v. Richardson,* 431 Pa.Super. 496, 636 A.2d 1195, 1196 (1994) (citation omitted).

¶ 10 Here, assuming, *arguendo,* that Mr. Herring did not suffer actual bodily injury, the evidence was sufficient to prove that Appellant attempted to cause bodily injury to Mr. Herring. For instance, Mr. Herring testified that Appellant hit him once, and then backed up so that he could hit him again. This evidence clearly supports the jury's finding that Appellant intentionally tried to cause bodily injury to Mr. Herring. As discussed *supra,* contrary to Appellant's assertion, it was unnecessary for the Commonwealth to prove that Mr. Herring actually suffered bodily injury.

¶ 11 Appellant's next claim is that the evidence was insufficient to sustain his conviction for accidents involving death or personal injury. We disagree.

¶ 12 Pursuant to 75 Pa.C.S.A. § 3742:

The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

¶ 13 As Appellant points out, Section 3742 does not define the term "injury." Appellant contends that we should adopt the definition of "bodily injury," which is

found in 18 Pa.C.S.A. § 2301. We decline to do so and find that the case *sub judice* is controlled by this Court's decision in *Commonwealth v. Gonzalez*, 325 Pa.Super. 371, 472 A.2d 1389, 1391 (1984),[3] which held the following:

> Since the legislature did not provide a comprehensive definition of 'injury' when it enacted § 3742, it is the opinion of this Court that a 'common sense' application of the term be utilized, which carries out the legislative intent and purpose of § 3742.

> Section 3742 is a hit-and-run statute, which supersedes 75 P.S. 1027, and is aimed at punishing drivers who attempt to flee the scene of an accident in which they had been involved without fulfilling their legal duty to stop, give information, and render aid. Section 3742 was intended to deal with a very serious problem—the hit-and-run driver, who is seeking to evade his responsibility. While § 3742 is a 'penal' statute and should be strictly construed, it should not be so narrowly and technically construed as to reach an absurd result.

> The ... legal question before this Court is whether the appellant could have been found guilty of violating § 3742. This question is not concerned with the extent of the victim's injury, but rather with whether the victim did in fact suffer any injury due to the accident.

> Black's Law Dictionary broadly defines 'injury' as: '[a]ny wrong or damage done to another, either in his person, rights, reputation, or property.' The term 'personal injury' is defined as: '[i]n a narrow sense, a hurt or damage done to a man's person, such as a cut or bruise, a broken limb, or the like, as distinguished from an injury to his property or reputation.'

> In light of the purpose and intent of § 3742, it is the opinion of this Court that the term 'injury' should be broadly defined. Applying a narrow construction of this term would otherwise enable hit-and-run drivers to use a legal technicality as a means of evading their responsibility under § 3742. This result would clearly defeat the purpose and intent of § 3742.

(citations and quotation omitted).

¶ 14 In the case *sub judice*, Mr. Herring testified that he suffered bruises, cuts, and pain to his knees. N.T. 5/11/99 at 80. In light of the above stated definition of "injury," we conclude that the evidence was sufficient to show that Mr. Herring suffered the type of injury intended by Section 3742.

¶ 15 Appellant also contends that the evidence was insufficient to convict him under 75 Pa.C.S.A. § 3742 because he eventually provided the information required under Section 3744. We find this argument to be specious.

¶ 16 As mentioned previously, Section 3742 mandates that a person who is involved in a motor vehicle accident, which results in personal injury, stop at or as close to the scene as possible and remain there until the requirements of Section 3744 are met. Section 3744 requires, in pertinent part, that a driver who is involved in an accident resulting in injury or death must give his name, his address, and the registration number of the vehicle he is driving to the other driver, and, upon request, he must exhibit his driver's license and financial responsibility card. Also, the

---

**3.** We note that Section 3742 has been amended since we filed our opinion in *Gonzalez, supra*. However, the amendments relate to the grading/penalties associated with violating 3742 and do not affect the elements.

driver must render reasonable assistance to anyone involved in the accident.

> When analyzing ... Appellant's behavior under this standard to determine whether it violated the Act, two things must be observed. One, the purpose of the Act must be considered. As the Commonwealth Court observed in *Commonwealth v. Stamoolis,* 6 Pa.Cmwlth. 617, 297 A.2d 532, 533 (1972), the aim of the law was at preventing drivers from leaving the scene of the accident and trying to avoid their responsibilities. Second, in applying the law strictly an absurd result must not follow.

*Commonwealth v. Gosnell,* 327 Pa.Super. 465, 476 A.2d 46, 48 (1984). We find that Appellant's behavior did not substantially fulfill the Act's requirements.

¶ 17 At trial, Pennsylvania State Police Trooper Christopher C. Keppel testified that he arrived on the scene and discovered that Appellant had left immediately after he had hit Mr. Herring. Mr. Keppel then proceeded to Appellant's residence, and Appellant admitted that he was involved in the incident. N.T. 5/12/99 at 158. At trial, Appellant testified that he did not stop his vehicle after he had hit Mr. Herring because he was angry and was afraid that he would make the situation worse. N.T. 5/12/99 at 191–192. Appellant admitted that he did not provide the necessary information until after he returned home and heard on his police scanner that the police were investigating the hit-and-run incident. N.T. 5/12/99 at 192. Based on these facts, we conclude that the requisites of the statute were not met. The Act requires something more than a driver providing the necessary information only after he learns that his identity might be discovered. *Cf. Gosnell, supra* (holding that where the appellant remained at the scene, rendered aid, and gave his name to the police, the evidence was insufficient to convict him under Section 3742 even though the appellant initially lied about his involvement in the accident). In addition to providing the necessary information, the Act requires that drivers stop their cars immediately and render assistance to anyone involved in the accident. Appellant admits that he did not do this, and, therefore, he violated Section 3742.

¶ 18 Appellant's next claim is that his sentence is illegal because simple assault merged with reckless endangerment for sentencing purposes. We agree, and the Commonwealth does not dispute, that the conviction for simple assault merged with the conviction for reckless endangerment for sentencing purposes and that the sentencing court erred with regard thereto.[4] *Commonwealth v. Peer,* 454 Pa.Super. 109, 684 A.2d 1077 (1996); *Commonwealth v. Berrena,* 421 Pa.Super. 247, 617 A.2d 1278 (1992). However, we find it unnecessary to remand this case for resentencing on this basis.

> [W]here a case requires a correction of sentence, this [C]ourt has the option of either remanding for resentencing or amending the sentence directly. As [A]ppellant concedes, ... the sentence for reckless endangerment run[s] concurrently with the sentence for simple assault. Thus, the aggregate sentence is not changed by merging the sentences. As such, a remand is not necessary. Instead we will vacate the concurrent sentence for recklessly endangering another person.[5]

---

4. A claim that convictions merged for sentencing purposes is a challenge to the legality of sentence. *Commonwealth v. Rippy,* 732 A.2d 1216 (Pa.Super.1999).

5. "We recognize that we are vacating the sentence for the greater offense of reckless endangering another person while allowing the sentence to stand for the lesser included

*Berrena*, 617 A.2d at 1280 (quotation and quotation marks omitted).

¶ 19 Appellant's next claim is that the sentencing court abused its discretion in relying on a newspaper article, which reported that Appellant's time served was only one day, in resentencing Appellant to an increased minimum term of imprisonment.[6] To support his contention, Appellant cites to this Court's decision in *Commonwealth v. Moore*, 400 Pa.Super. 151, 583 A.2d 1 (1990), wherein we held that a sentencing court may not delegate its sentencing decision to any person or group.[7] We conclude that the sentencing court did not delegate its sentencing power to the newspaper's personnel.

¶ 20 The record reveals that after a newspaper article reported that Appellant's initial sentence was incorrect, the sentencing judge contacted York County Prison officials requesting that Appellant's record be checked to confirm the amount of time Appellant had served. Only after the York County Prison confirmed that Appellant had served one day, did the sentencing court resentence Appellant. It is clear that, contrary to Appellant's assertion, the sentencing court did not resentence Appellant solely because of information printed in a newspaper article. Once the sentencing court confirmed that Appellant's initial sentence was illegal, we conclude that the court could not permit the illegal sentence to stand.

¶ 21 Appellant's final claim is that the sentencing court violated the Double Jeopardy Clause of the United States and Pennsylvania Constitutions when the court imposed a harsher sentence upon resentencing Appellant. The "Supreme Court has spoken on this subject by pointing out that 'an illegal sentence is a legal nullity, and the sentencing court must have the authority to correct such a sentence even if that means increasing the sentence.'" *Commonwealth v. Pastorkovic*, 390 Pa.Super. 1, 567 A.2d 1089, 1093 (1989) (citation and quotation omitted). As such, Appellant's claim is meritless.[8]

¶ 22 For all of the foregoing reasons, we vacate the June 30, 1999 judgment of sentence as it relates to Appellant's conviction for reckless endangerment. In all other respects, we affirm the June 30, 1999 judgment of sentence.

¶ 23 Affirmed in part and vacated in part.

¶ 24 MUSMANNO, J., concurs in the result.

---

offense of simple assault. However, our decision as to which sentence to be vacated is not guided by which sentence is for the lesser or greater offense. Rather[,] our decision is guided by which crime has the greatest possible sentence." *Berrena*, 617 A.2d at 1280 n. 7 (citations omitted).

6. We note that in his brief Appellant has included a statement pursuant to Pa.R.A.P. 2119. We will assume, *arguendo*, that Appellant's claim raises a substantial question.

7. In *Moore*, we held that the sentencing court did not abdicate its sentencing responsibility when it considered the Probation Department's recommendation on sentencing.

8. In light of the Supreme Court's conclusion that the sentencing court had jurisdiction to modify the June 22, 1999 order, we shall not address Appellant's issue with regard thereto.